**F I L E D**

**PUBLISH**

**AUG 21 2002**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

VERONICA WILSON; PETE
TERRELL WILSON,

      Plaintiffs - Appellees/Cross-
      Appellants,

v.

KENNETH MUCKALA, M.D.;
COLUMBIA DOCTORS HOSPITAL
OF TULSA, INC., doing business as
Columbia Doctors Hospital,

      Defendants - Appellants/Cross-
      Appellees.

Nos. 00-5131, 00-5137, 00-5138

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 97-CV-910-E)**

---

Submitted on the Briefs:[*]

Bill V. Wilkinson, Wilkinson Law Firm, Tulsa, Oklahoma, for Plaintiffs -
Appellants.

---

    [*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal.  See Fed. R. App. P. 34(a); 10th Cir. R. 34.1 (G).  The cause therefore
is ordered submitted without oral argument.

Stephen L. Andrew and D. Kevin Ikenberry, Stephen L. Andrew & Associates, Tulsa, Oklahoma, for Defendant - Appellee Kenneth Muckala.

Stephen J. Rodolf, Karen L. Callahan and Leslie C. Weeks, Rodolf & Todd, Tulsa, Oklahoma, for Appellant Hospital.

---

Before **KELLY**, **PORFILIO**, and **ANDERSON**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

Plaintiffs sought to recover on several claims stemming from alleged incidents of sexual harassment against an individual doctor, the hospital where Plaintiff and doctor worked, hospital board members, and former owners. The district court granted summary judgment in favor of several Defendants, and the jury ultimately found for the remaining Defendants on all counts except negligent infliction of emotional distress. The jury awarded compensatory damages in the amount of $25,000 against Dr. Muckala, and $15,000 against the Hospital. In cross-appeals, Plaintiffs contest numerous evidentiary and procedural rulings and Defendants challenge their liability for negligent infliction of emotional distress.

**Background**

In 1997, Plaintiffs Veronica Wilson and her husband Pete Wilson filed suit based on Ms. Wilson's alleged sexual harassment by Dr. Kenneth Muckala who was Vice-Chief and Chief of Staff of Columbia Doctors Hospital of Tulsa, Inc.

("Hospital") during Ms. Wilson's employment there as a psychiatric nurse. Ms. Wilson claimed that Dr. Muckala sexually harassed her from September 1996 through March 1997, leading to her resignation from the Hospital in May 1997.

Plaintiffs' amended complaint alleged (1) state law claims for sexual assault and battery, tortious interference with contract, and invasion of privacy against Dr. Muckala; (2) Title VII claims against the Hospital, Columbia/HCA Healthcare ("Columbia"), and Healthtrust, Inc. ("HTI"); and (3) negligence against the Hospital, Columbia, HTI, and the individual board members. Mr. Wilson claims loss of consortium against all Defendants.

The district court granted summary judgment in favor of Columbia, HTI, and the board members. The doctor and the Hospital went to trial where a jury found in favor of Ms. Wilson and against both Defendants on the negligent infliction of emotional distress claim, and for the Defendants on all other claims.

**Discussion**

A.    **Negligent Infliction of Emotional Distress Against the Hospital**

Both Dr. Muckala and the Hospital challenge their liability for negligent infliction of emotional distress. Prior to and following the jury verdict, both Defendants moved for judgment as a matter of law, but the district court denied their motions. Defendants now appeal.

The Hospital argues that Oklahoma does not recognize a cause of action for negligent infliction of emotional distress. This plain statement is not quite accurate. Rather, Oklahoma courts say that negligent infliction of emotional distress is not an independent tort, but is in effect the tort of negligence. Kraszewski v. Baptist Med. Ctr of Okla., Inc., 916 P.2d 241, 243 n.1 (Okla. 1996); Lockhart v. Loosen, 943 P.2d 1074, 1081 (Okla. 1997); Mason v. State ex rel. Bd. of Regents of Univ. of Oklahoma, 23 P.2d 964, 969 (Okla Ct. App. 2000). A Plaintiff therefore cannot proceed on a negligent infliction of emotional distress theory of liability separate from negligence, Lockhart, 943 P.2d at 1081, and the traditional elements of duty, breach of duty, causation, and damages apply. Kraszewski, 916 P.2d at 245. The question in this case is simply whether the Defendants were justly found liable for negligence.

In looking to the merits of Ms. Wilson's claim sounding in negligence, the Hospital contends that the lack of evidence of physical injury provides a basis for reversal. In Oklahoma, damages for mental anguish are recoverable only if they are "produced by, connected with or the result of physical suffering or injury to the person enduring the mental anguish." Ellington v. Coca Cola Bottling Co. of Tulsa, 717 P.2d 109, 111 (Okla. 1986). This means that "[u]pon proper proof, the Plaintiff may recover for mental anguish where it is caused by physical suffering and may also recover for mental anguish which inflicts physical suffering." Id.;

- 4 -

see also Slaton v. Vansickle, 872 P.2d 929, 931 (Okla. 1994) ("Oklahoma does acknowledge a claim for physical injury where it is accompanied by mental stress or mental stress is accompanied by physical injury").  Oklahoma law obligated Ms. Wilson to provide proof of *some* physical injury, whether incurred contemporaneously with her emotional injury, or whether as a direct consequence of her emotional injury.

The Hospital's claim that there is no evidence that Ms. Wilson suffered any physical harm is not quite true.  Some evidence came from her treating psychiatrist, who testified that following Ms. Wilson's resignation from the Hospital,

> she described increasing feelings of humiliation, intimidation, very, very strong subjective unpleasant feelings, as well as...increasing depression.  She had difficulty sleeping, crying, sad, gained weight, lost interest in working, felt not safe working as a nurse, at least at Doctors.

IV Wilson App. at 999.

The Hospital requested that the jury instructions on negligent infliction of emotional distress mention the required finding of physical injury consequent to the emotional distress–a request denied by the district court.[1]  We review de novo

---

[1]The Court gave the Plaintiffs' requested jury instruction as follows: "Plaintiffs, Veronica Wilson and Pete Wilson, allege claims of negligent infliction of emotional distress against the Defendants.  The elements of a claim for negligent infliction of emotional distress are that (1) Dr. Muckala and/or Columbia Doctors' Hospital engaged in negligent conduct; 2) Veronica Wilson

a timely challenge to a jury instruction to determine whether, considering the instructions as a whole, the jury was misled.  United States v. Guidry, 199 F.3d 1150, 1156 (10th Cir. 1999) (internal citations omitted).  We reverse only when we "have substantial doubt that the jury was fairly guided."  Id.

In light of the clear requirement that physical damages accompany an award for mental distress or anguish, and the evidence of physical harm presented at trial, we find that the jury instructions on negligent infliction of emotional distress delivered by the district court were infirm and constitute reversible error.

We need not reach the Hospital's contention that, as a matter of law, the Hospital had no common law duty to protect their employee, Ms. Wilson, from sexual harassment by Dr. Muckala.

**B.      Negligent Infliction of Emotional Distress Against Doctor Muckala**

Dr. Muckala challenges the verdict on Ms. Wilson's claim for negligent infliction of emotional distress because, though alleged in the original complaint, it does not appear in the amended complaint, and was not clearly alleged in the pretrial order.  The doctor argues that, throughout the trial, he was unaware that the claim for negligent infliction of emotional distress remained alive, until after the close of the evidence, when Plaintiffs' counsel sought a jury instruction on the

---

and Pete Wilson suffered serious emotional distress; and (3) Dr. Muckala and/or Columbia Doctors' Hospital's negligent conduct was a cause of the serious emotional distress."  II Hospital App. at 311.

claim against him as well as the Hospital. Dr. Muckala then objected.

The district court wrestled with the status of the negligent infliction claim, and whether it had been sufficiently alleged. First, the court allowed it "[i]n consideration of fairness to the plaintiff." Muckala App. at 193. However, Defendants pointed out that the claim clearly had been dropped in the amended complaint. In light of that argument, the court disallowed the claim, ruling that the clause in the pretrial order saying that, "the defendants, are sued at common law," was insufficient to resurrect a claim previously dropped from the case. Muckala App. at 195. The court speculated that the phrase, "the defendants", was mistakenly carried over from the original pretrial order and included the board members who were no longer parties in the case. Muckala App. at 197. Finally, though, the court allowed the claim and instructed the jury accordingly "because of the conflict on that issue," but it reserved ruling on Dr. Muckala's objection until after the verdict. The jury found for the Plaintiff solely on the claim for negligent infliction of emotional distress. After the verdict, the court overruled the doctor's objection, concluding that, despite the wording of the amended complaint and the pretrial order, Dr. Muckala had not been unfairly surprised by the instruction to the jury. Muckala App. at 122-23. Dr. Muckala appeals the district court's ruling.

The original complaint clearly alleged the claim of negligent infliction of

emotional distress against Dr. Muckala, and the amended complaint just as clearly dropped the claim. The amended complaint alleged negligence only against "the Defendants identified in paragraphs 3 and 4." Muckala App. at 30. The Hospital and the board members were named in paragraphs three and four, while Dr. Muckala was named in only the second paragraph. Muckala App. at 24-25. The amended complaint describes the negligence cause of action, but the heading of that section lists only the Hospital and the board members, and the descriptive language in that section cannot be construed to include a claim against the doctor. Muckala App. at 30-32. Predictably, the doctor's answer to the amended complaint addressed only the remaining claims–sexual assault and battery, tortious interference with contract, and invasion of privacy–and did not respond in any way to negligent infliction of emotional distress. Muckala App. at 132 (docs. 23-24).

Ms. Wilson argues she reasserted negligent infliction of emotional distress in the pretrial order. However, the pertinent parts of that document are ambiguous. In the statement of the case, the pretrial order states that Dr. Muckala is "a Defendant under two separate legal theories: sexual assault and battery, and invasion of privacy."[2] Muckala App. at 37.

_____

[2]The court later allowed the Plaintiffs to add the tortious interference with contract claim.

The following paragraph, however, indicates generally that "Defendants" are sued under common law negligence and negligent infliction of emotional distress. Plaintiffs argue that, though the order nowhere indicates that any claims have been added or amended, this paragraph alone suffices to renew a previously dropped claim. The doctor's actions belie Plaintiffs' suggestion that he was apprised of the claim–his statement of issues in the pretrial order was limited to the sexual assault and invasion of privacy claims, reflecting a belief that the negligent infliction of emotional distress claim was no longer part of the case against him. Upon Dr. Muckala's motion for judgment as a matter of law at the close of Plaintiffs' evidence, neither side mentioned the negligent infliction of emotional distress claim, instead focusing on the three claims still clearly in play. Muckala App. at 167-176.

"When an issue is set forth in the pretrial order, it is not necessary to amend previously filed pleadings" because "the pretrial order is the controlling document for trial." Expertise Inc., v. Aetna Fin. Co., 810 F.2d 968, 973 (10th Cir. 1987); Fed. R. Civ. P. 16(e). As such, claims, issues, defenses, or theories of damages not included in the pretrial order are waived even if they appeared in the complaint and, conversely, the inclusion of a claim in the pretrial order is deemed to amend any previous pleadings which did not include that claim.

The preparation of a pretrial order requires careful attention and review by

the parties and their attorneys. While we recognize that "the pretrial order is treated as superceding the pleadings and establishing the issues to be considered at trial," Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1522, we do not normally expect to see claims or defenses not contained in the pleadings appearing for the first time in the pretrial order, especially in such cursory form. Such a practice deprives one's adversary of fair notice, possibly discovery, and the opportunity for motion practice, and is subject to abuse by those who employ a sporting theory of justice. The laudable purpose of Fed. R. Civ. P. 16 to avoid surprise, not foment it. See Clark v. Pennsylvania R.R. Co., 328 F.2d 591, 594 (2d Cir. 1964) (the purpose of Rule 16 is to replace "the old sporting theory of justice" with a policy of "putting the cards on the table"). Should a new claim or defense appear for the first time in the pretrial order, it is incumbent upon opposing counsel to meticulously examine the order, taking exception, if necessary, to the additions, and recording their objection in the pretrial order. Meanwhile, the party seeking to add a claim or defense should do so with specificity and clarity so as to minimize the ill effects of that practice. Specificity and clarity provide the trial court with a fair opportunity to consider whether to approve or deny what is obviously an attempt to amend the pleadings at a rather late date. Fed. R. Civ. Pro. 15(a).

Plaintiffs had ample opportunity to sculpt and refine the pretrial order to

include every allegation against Dr. Muckala. Their duty to do so was especially important if they intended to include, as they contend they did, a claim previously dropped in the amended complaint. Unfortunately, the pretrial order does not clearly convey their purported intent to re-allege any claim.

In dealing with an ambiguous pretrial order such as this, we must evaluate the order contextually to determine whether the claim was contained therein. In this case, the clear language of the amended complaint, coupled with the ambiguous language of the pretrial order, lead us to conclude that there was insufficient documentary support for the allegation of a claim of negligent infliction of emotional distress against Dr. Muckala. Our conclusion is reinforced by the absence of any mention of this claim in the doctor's answer to the amended complaint, or in the pretrial order statement of the case, and the lack of any mention of the claim by Plaintiffs or Defendant at the hearing on Defendant's Rule 50 motion at the close of Plaintiffs' case, though all other claims were discussed. In light of these facts, we find that the cause of action for negligent infliction of emotional distress did not run against Dr. Muckala and we reverse the verdict of liability on that claim.

## C.    Evidentiary Rulings

Plaintiffs appeal several of the district court's decisions to exclude evidence, which we review for an abuse of discretion. United States v. Becker,

230 F.3d 1224, 1232 (10th Cir. 2000).  They argue first that the district court erred in prohibiting testimonial evidence of Dr. Muckala's alleged extra-marital affairs.  Plaintiffs sought to introduce the evidence for the purpose of impeaching the doctor's deposition statement that he never solicited or had an adulterous relationship while employed at the Hospital.

Plaintiffs do not address the application of Fed. R. Evid. 608(b), which provides in pertinent part that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility,...may not be proved by extrinsic evidence."  Instead, Plaintiffs cites two cases, the first, United States v. Barrett, 8 F.3d 1296 (8th Cir. 1993), is inapposite as it solely relates to the admissibility of hearsay.  The court in the second case, Livergood v. S.J. Graves & Sons Co., 254 F.Supp. 879 (W.D. Pa. 1965), admitted evidence of errant driving that took place only moments before the accident which was the subject of the case.  The court found the evidence not "wholly collateral," and therefore applied the test for relevancy.  Livergood, 254 F.Supp. at 880.  Testimony about Dr. Muckala's sexual history is, on the contrary, "wholly collateral," and nevertheless exceedingly less relevant than the evidence at issue in Livergood.  We find no abuse of discretion as the Plaintiffs have not cited, nor do we see, any relevant legal basis for departing from Rule 608(b)'s command that extrinsic evidence not be used to impeach a witness.

Plaintiffs also sought to introduce testimony regarding alleged instances of past sexual harassment by the doctor in order to prove his "discriminatory intent" and "motive." Evidence of other crimes, wrongs, or acts is inadmissible to prove the character of a person in order to show action in conformity therewith. Fed. R. Evid. 404(b). However, evidence of prior bad acts is admissible for purposes other than to show action in conformity with character. Id. Such purposes include, but are not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Id. If offered for a proper purpose under Rule 404(b), the evidence of prior bad acts is admissible only if (1) it is relevant under Fed. R. Evid. 401; (2) the probative value of the evidence is not substantially outweighed by its potential for unfair prejudice under Fed. R. Evid. 403; and (3) the district court, upon request, instructs the jury to consider the evidence only for the purpose for which it was admitted. Becker, 230 F.3d at 1232.

Evidence of a defendant's past sexual harassment admitted to prove discriminatory intent in cases of race and gender discrimination is admitted for a proper purpose under Rule 404(b). Spulak v. K-Mart Corp., 894 F.2d 1150, 1156 (10th Cir. 1990); Heyne v. Caruso, 69 F.3d 1475, 1479-80 (9th Cir. 1995). But as noted in Heyne, alleged previous harassment cannot be used to show that a defendant harassed a plaintiff on a specific subsequent occasion. Heyne, 69 F.2d

at 1480. As the district court noted in its ruling in this case, the Plaintiff conceded that the Hospital had no notice of the alleged prior incidents, so the testimony could not have been sought to prove the Hospital's discriminatory intent. Further, there is no discriminatory intent element in the claims brought against Dr. Muckala. And because these alleged prior incidents of sexual harassment occurred in places outside the Hospital, they were not relevant to establish a hostile work environment claim. See Hicks v. Gates Rubber Co., 833 F.2d 1406, 1415 (10th Cir. 1987). Plaintiffs seek to admit this evidence, not to show discriminatory intent, but instead to prove the fact of the harassment itself–exactly the purpose prohibited by Plaintiffs' cited cases and by Rule 404(b). The district court did not abuse its discretion in excluding evidence of alleged prior bad acts.

Ms. Wilson challenges the district court rulings to (1) exclude the testimony of Amber Flint, a former employee of the Hospital allegedly fired for reporting charges of sexual harassment; (2) prohibit Plaintiffs from mentioning Ms. Flint in the presentation of their case; and, (3) deny Plaintiffs' request for supplemental discovery of the Hospital's internal files on the sexual harassment charges brought by Ms. Flint.

Ms. Wilson's appellate brief describes at great length the circumstances of Ms. Flint's termination and its relevance to Plaintiffs' case. Plaintiffs wanted to

show that the firing of Ms. Flint after she reported sexual harassment to the Hospital made Ms. Wilson hesitant to report her own alleged harassment, thus explaining her delay. Unfortunately, Plaintiffs' discussion omits numerous important details that formed the basis of the district court decision to deem the evidence irrelevant–details such as Ms. Wilson's own deposition testimony that she did not know Amber Flint, that she only heard a rumor that Ms. Flint filed a sexual harassment claim, and that she did not know the outcome of Ms. Flint's claim. III Hospital App. at 604-05. Furthermore, the defense presented evidence that Ms. Flint was still an employee during the time that Ms. Wilson claimed to be afraid to report her harassment. I Hospital Supp. App. at 270. Finally, there was evidence that Ms. Flint was not fired at all, but instead, terminated under hospital policy for per diem workers who do not complete a shift within three consecutive months. I Hospital Supp. App. 268-69. After reviewing the record, we are convinced that the district court did not abuse its discretion when it disallowed evidence regarding Amber Flint.

At trial, Ms. Wilson sought to introduce expert testimony from her treating psychiatrist that she was telling the truth when she said she was a victim of sexual harassment. The district court limited the testimony, ruling that the witness would not be "entitled to opine on the veracity of [Ms. Wilson's] complaint,...whether [the psychiatrist] believes she is telling the truth," or

"whether he believes that she was sexually harassed." III Wilson App. at 826. The court did permit the witness to testify about Ms. Wilson's psychological condition and his treatment of that condition. Id.

Trial courts have broad discretion to determine the admissibility of expert testimony and we review such decisions for abuse of discretion. Taylor v. Cooper Tire & Rubber Co., 130 F.3d 1395, 1397 (10th Cir. 1997). Expert testimony on the psychological and emotional traits of abuse victims is typically admissible, so long as the witness makes no comment on the alleged victim's credibility, or identify the alleged victim as a victim of abuse. United States v. Charley, 189 F.3d 1251, 1265 (10th Cir. 1999). The credibility of witness testimony is a matter left to the jury and generally is not an appropriate subject for expert testimony. United States v. Adams, 271 F.3d 1236, 1245 (10th Cir. 2001) (internal citation omitted). The trial court did accurately and precisely lay out the parameters of what the treating psychiatrist could testify to. Plaintiffs cite no law, apart from Fed. R. Evid. 702 and 704, to support their claim that the testimony should not have been excluded "simply because it embraces an ultimate issue to be decided by the jury–whether Veronica Wilson's complaints and symptoms are credible." Wilson Br. at 55. We find no error in the district court's ruling that the expert could testify to Ms. Wilson's condition, but not give his opinion on her credibility.

- 16 -

Similarly, the district court prohibited testimony from a human resources expert regarding the Hospital's response plan in cases of sexual harassment, and the reasonableness of the Hospital's response to Ms. Wilson's claim. The court found this expert testimony relevant, but excluded it because the facts were "not so complicated as to require the testimony of an expert witness on either the adequacy of the plan or policy or the investigation" that followed. III Hospital App. at 781. In reviewing a trial court's exclusion of evidence, "we will reverse only if the exclusion is an abuse of discretion that results in 'manifest injustice to the parties.'" Thompson v. State Farm Fire & Casualty Co., 34 F.3d 932, 939 (10th Cir. 1994) (citations omitted).

The 'touchstone' of admissibility of expert testimony is its helpfulness to the trier of fact. Werth v. Makita Elec. Works, Ltd., 950 F.2d 643, 648 (10th Cir. 1991). "When the normal experiences and qualifications of laymen jurors are sufficient for them to draw a proper conclusion from given facts and circumstances, an expert witness is not necessary and is improper." Frase v. Henry, 444 F.2d 1228, 1231 (10th Cir. 1971). After reviewing the record, we agree with the district court that the issues to which Ms. Wilson's expert would have testified were not so impenetrable as to require expert testimony. The district court did not abuse its discretion in excluding the testimony of the human resources expert.

**D.    Dismissal of Hospital Board Members and Corporate Entities**

Plaintiffs challenge the district court's grant of summary judgment to Defendants Columbia/HCA Healthcare ("Columbia"), Healthtrust, Inc. ("HTI), and the Hospital Board Members. "We review the grant or denial of summary judgment de novo, applying the same legal standard used by the district court..." Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996) (citation omitted). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Inexplicably, Plaintiffs' counsel agreed to the dismissal of HTI in a joint stipulation, filed on February 11, 1999. II Hospital App. at 173-74. Regardless, HTI and Columbia provided uncontroverted documentary evidence, including a bill of sale, showing that they did not own the Hospital at the time of the alleged sexual harassment. I Hospital Supp. App. at 210-211, 317. As countervailing evidence, Plaintiffs offer only the Defendants' failure to specifically deny ownership in their answer to the original complaint, and the dubious assertion that the "names by which the Hospital has been known" suggest ownership by HTI and Columbia. We review the record in the light most favorable to the nonmoving party, Thournir v. Meyer, 909 F.2d 408, 409 (10th Cir. 1990), but this generous

standard cannot compensate for the Plaintiffs' complete lack of "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). We find no error in the dismissal of Columbia and HTI.

Plaintiffs claimed only negligence against the Hospital board members. Upon finding no statutory or common law duty to protect another person–Ms. Wilson in this case–from sexual harassment, the district court granted summary judgment for the board members. Plaintiffs appeal that decision. The jury found against Dr. Muckala only on the negligent infliction of emotional distress claim, which we reverse on appeal as insufficiently alleged. Consequently, we find that, even if it was error to grant summary judgment for the board members, any error was harmless. Plaintiffs could not have sustained a cause of action in negligence against these individuals when the alleged perpetrator himself was exonerated of negligence.

The district court ruled on summary judgment that Dr. Muckala was not a hospital employee–a ruling Plaintiffs challenge on appeal. Under the state law standards set forth in Sawin v. Nease, 97 P.2d 27, 29-32 (Okla. 1939), the touchstone of an employment relationship is the right to control the means and manner of the worker's performance. See also Zinn v. McKune, 143 F.3d 1353, 1357 (10th Cir. 1998). In determining whether one is an "employee" under Title VII, we have considered the following factors:

(1) the kind of occupation at issue, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the employer or the employee furnishes the equipment used and the place of work; (4) the length of time the individual has worked; (5) the method of payment, whether by time or by job; (6) the manner in which the work relationship is terminated; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the employer; (9) whether the worker accumulates retirement benefits; (10) whether the employer pays social security taxes; and (11) the intention of the parties.

Id.

Plaintiffs provide little evidence pertaining to these factors, but point exclusively to the doctor's role as Chief of Staff. However, the Hospital introduced significant evidence that the doctor was an independent contractor, not a salaried employee, and that his service as Chief of Staff was a collateral duty to which he was elected by his peers and paid $1000 per month from staff dues. In light of this explanation, the doctor's role as Chief of Staff and the associated monthly check do not even approach an adequate showing that the Hospital controlled the means and manner of Dr. Muckala's performance. The district court did not err in granting summary judgment on this issue.

Plaintiffs also find error in the district court's rejection of the apparent authority or aided-by-the-agency theory of liability for sexual harassment. An employer might be vicariously or directly liable for a hostile work environment created by its employees. Harrison v. Eddy Potash, Inc., 158 F.3d 1371, 1376

- 20 -

(10th Cir. 1998). In the usual case, vicarious liability stems from a supervisor's misuse of actual authority. Id. at 1377. In addition, an employer may be vicariously liable when the harassing employee has apparent authority–gives "the false impression that the actor was a supervisor, when he in fact was not, [and] the victim's mistaken conclusion [was] a reasonable one." Burlington Indus. Inc. v. Ellerth, 524 U.S. 742, 759 (1998). This is the unusual case. Id. We must look for evidence that "the [harassing employee] purported to act or speak on behalf of the [employer] and there was reliance upon apparent authority, or the [harassing employee] was aided in accomplishing the tort by the existence of the agency relation." Burlington Indus. Inc., 524 U.S. at 758 (quoting Restatement (2d) of Agency § 219(1)).

The district court found on summary judgment that there was no support for an apparent authority theory of vicarious liability. Ms. Wilson cites her own affidavit testimony that she felt Dr. Muckala, as Chief of Staff, had power and authority over her job, and that he told her he had such power because of his position as well as his friendship with the Hospital CEO. However, Ms. Wilson received assurances from her immediate supervisors that Dr. Muckala exercised no authority over her position, and in describing her chain of command, identified her supervisors and the administration, but did not imply that Dr. Muckala had a place in it. We agree with the district court that there was insufficient evidence

put forward to demonstrate that Dr. Muckala, who had no actual authority over Ms. Wilson, exercised apparent authority over her.

Furthermore, under Oklahoma law, apparent authority "results from a manifestation by the principal to a third person that another is his agent." Stephens v. Yamaha Motor Co., 627 P.2d 439, 441 (Okla. 1981). "Agency cannot be proven by the reputed declarations of the reputed agent." Home Owners Loan Corp. v. Thornburg, 106 P.2d 511, 514 (Okla. 1940). A third party asserting apparent authority to bind an alleged principal to a contract must also demonstrate its reliance on the principal's manifestation and its change of position as result thereof. Southwestern Bell Media, Inc. v. Arnold, 819 P.2d 293, 294 (Okla. Ct. App. 1991). There was no evidence of a manifestation or holding out by the Hospital to Ms. Wilson that Dr. Muckala was the Hospital's agent. Dr. Muckala's alleged declarations alone cannot serve to bind the Hospital under a theory of apparent authority.

Plaintiffs argue that the district court abused its discretion when it refused to add a claim for quid pro quo sexual harassment to the pretrial order in light of the recently decided Collier v. Insignia Financial Group, 981 P.2d 321 (Okla. 1999). "The order following a final pretrial conference shall be modified only to prevent manifest injustice." Fed. R. Civ. P. 16(e). As discussed above, Dr. Muckala did not have either actual or apparent supervisory authority over Ms.

Wilson. Absent the possibility that job benefits were conditioned "on an employee's submission to conduct of a sexual nature" and that "adverse job consequences result from the employee's refusal to submit to the conduct," there can be no legitimate claim of quid pro quo sexual harassment. Hicks, 833 F.2d at 1414.

Plaintiffs argue that the district court ruled inconsistently on Plaintiffs' claim for tortious interference with business relations against Dr. Muckala and that, consequently, Plaintiffs' counsel failed to present evidence on that claim because he thought it "not viable." However, Plaintiffs do not direct this court to their objection at trial (if there was one), cite no law supporting reversal, and do not proffer any evidence that they would have submitted at trial to support the tortious interference claim but for their erroneous belief that the claim was no longer alive.

Finally, Plaintiffs appeal a lengthy list of jury instructions requested and denied by the district court. Merely listing the rejected instructions does not satisfy the briefing requirements of this court and we therefore deem all waived except the instruction pertaining to circumstantial evidence which was briefed in some detail. Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 679 (10th Cir. 1998). However, that instruction was given as part of a general instruction on the evidence, IV Wilson App. at 916, as agreed to by Plaintiffs' counsel. III Hospital

- 23 -

Supp. App. at 813.  We find no error.

Plaintiffs' motion to supplement their appendix is granted.

AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.