**Kristi HAYES, et al., Plaintiffs,**

v.

**WAL–MART STORES, INC., et al., Defendants.**

**No. 03–CIV–208–WH.**

United States District Court, E.D. Oklahoma.

Nov. 13, 2003.

Tony W. Edwards, Timothy Dwight Maxcey, Mark L. Edwards, Stipe, Harper, Laizure, Uselton, Edwards & Belote, LLP, McAlester, OK, for plaintiffs.

Gerald L. Hilscher, Reuben Davis, Charles Greenough, Frederic N. Schneider, III, Boone, Smith, Davis, Hurst & Dickman, D. Richard Funk, Conner & Winters, P.C., Tulsa, OK, for defendants.

### ORDER

WHITE, District Judge.

Before the Court is the motion of the defendants to exclude expert testimony on punitive damages. Plaintiffs have an-

nounced their intention to present testimony of Will Clark, Ph.D., in which he will state his opinion that "a punitive damage award equal to or less than dividends paid would financially punish, but not irreparably harm [Wal–Mart]." Upon review, the motion will be granted.

The Court agrees with the well-reasoned conclusion in *Voilas v. General Motors Corp.*, 73 F.Supp.2d 452, 464 (D.N.J.1999) that "the assessment of possible ranges of punitive damages is not a proper subject for an expert's report or testimony", but wishes to elaborate its own reasoning.

Plaintiffs have produced to defendants Clark's Preliminary Appraisal of Potential Punitive Damages. In that document, Clark indicates he has reviewed an 11–year financial summary found in Wal–Mart's 2003 Annual Report. He then purports to set forth Wal–Mart's net income, shareholders' equity and equity dividends for each year from 1993 to 2003. He further states that Wal–Mart paid dividends of $1,070 million in 2001, $1,249 million in 2002, and $1,328 million in 2003. Finally, his substantive conclusion is as follows: "A punitive damage award of firm dividends would not cause irreparable financial harm since the money would simply flow to a claimant rather than to the shareholders. If dividends are reduced substantially, however, shareholders have substantial incentives to see that corporate management avoids repetition of the behavior giving rise to the punitive damage award."

Initially, the Court finds this document is inadequate under Rule 26(a)(2)(B) F.R.Cv.P. It states the opinion, but fails to provide the "whys" and "wherefores" by which that opinion is reached. *See generally Salgado v. General Motors Corp.*, 150 F.3d 735, 741 n. 6 (7th Cir.1998). The

essence of the theory is that payment of the total yearly dividend to a personal injury claimant rather than Wal–Mart shareholders will have no effect on the financial status of the company. This conclusion, as presented, is pure speculation. Clark does not state how he knows what the reaction by the shareholders would be to such an outcome. It is as easily speculated that the shareholders might sell their stock in whole or in part, causing a financial hemorrhage in the company. A virtual parade of horribles could be envisioned, stated in conclusory fashion as is Clark's surmise.

As is well known, Rule 702 F.R.Evid. imposes on a district court a gatekeeper obligation to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir.2003)(quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)). *Daubert* listed four nonexclusive factors that the trial court may consider: (1) whether the opinion at issue is susceptible to testing and has been subjected to such testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been accepted in the scientific community. *Dodge*, 328 F.3d at 1222.

The Court finds Dr. Clark's testimony fails to pass muster under each of these factors. As stated, his opinion amounts to little more than speculation as to what the effect on Wal–Mart will be if the jury were to calculate an award of punitive damages as equal to or less than dividends paid. Such a conclusion (so far as the present

record reflects) has not been tested or subjected to peer review, has no known error rate and has not been accepted in the community of economists. There is no methodology revealed by which he reaches his conclusion[1]. Indeed, the Court speculates that if Dr. Clark could, in fact, accurately predict the financial consequences of the suggested punitive damages award, he would be making millions consulting for Wall Street investment banks. His curriculum vitae, however, does not record such experience.

The touchstone of admissibility of expert testimony is its helpfulness to the trier of fact. *Wilson v. Muckala,* 303 F.3d 1207, 1219 (10th Cir.2002). " 'When the normal experiences and qualifications of laymen jurors are sufficient for them to draw a proper conclusion from given facts and circumstances, an expert witness is not necessary and is improper.' " *Id.* (quoting *Frase v. Henry,* 444 F.2d 1228, 1231 (10th Cir.1971)). The Court concludes Dr. Clark's proposed testimony would invade the province of the jury and would not be helpful to that body. Indeed, the risk of confusion or misleading under Rule 403 F.R.Evid. also counsels exclusion.

It is the Order of the Court that the motion of the defendants to exclude expert testimony on punitive damages (# 47) is hereby GRANTED.

---

**1.** The Court also notes the recent reiteration of the Supreme Court that " '[p]unitive damages pose an acute danger of arbitrary deprivation of property. Jury instructions typically leave the jury with wide discretion in choosing amounts, and the presentation of evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses, particularly those without strong local presences.' " *State Farm Mut. Automobile Ins. Co. v. Campbell,* 538 U.S. 408, 123 S.Ct. 1513, 1520, 155 L.Ed.2d 585 (2003)(quoting *Honda Motor Co. v. Oberg,* 512 U.S. 415, 432, 114 S.Ct. 2331, 129 L.Ed.2d 336 (1994)). Thus, the use of a defendant's net worth as a factor in assessing punitive damages may be in doubt. *See also State Farm,* 123 S.Ct. at 1531 n. 2 (Ginsburg, J., dissenting).