**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 25, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ROBERT CORTEZ,

       Plaintiff-Appellee,

v.

WAL-MART STORES, INC.,

       Defendant-Appellant.

No. 05-2169

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. CIV-03-1251-BB/LFG)**

Submitted on the briefs:[*]

Charles R. Peifer, Lauren Keefe, Peifer, Hanson & Mullins, P.A., Albuquerque, New Mexico, for Appellant.

Augustine M. Rodriguez, Rodriguez Law Firm, Albuquerque, New Mexico, for Appellee.

Before **HENRY**, **BRISCOE**, and **MURPHY**, Circuit Judges.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

**MURPHY**, Circuit Judge.

Plaintiff Robert Cortez sued defendant Sam's Club for discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-34 (ADEA), on account of the company's failure to promote him to the position of general manager.[1] During the trial, the district court twice denied Sam's Club's motions for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure, and the case went to the jury. The jury found that Sam's Club had violated the ADEA and awarded damages to Cortez. Sam's Club challenges the district court's denial of its Rule 50 motions, arguing that Cortez failed to prove that he was qualified for a promotion and also failed to establish that his complaint was timely filed. Exercising our jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND [2]

Cortez worked for Sam's Club from April 28, 1986, to April 29, 2003. On the day he resigned, he was 48 years old and had been an assistant manager of

---

[1]    Sam's Club is a wholly-owned division of Wal-Mart, Inc., the named defendant in this action. Since the plaintiff worked for Sam's Club, and the parties referred to the defendant throughout their briefs as Sam's Club, we will continue to do so here.

[2]    Since we are reviewing a jury verdict, we must view the record on appeal in the light most favorable to Cortez, the prevailing party at trial, and give him the benefit of all reasonable inferences to be drawn from the evidence. *See Abuan v. Level 3 Commc'ns, Inc.*, 353 F.3d 1158, 1164 (10th Cir. 2003).

several Sam's Club stores in Texas and New Mexico. The highest level that he reached in the company was the position of co-general manager of a store in Puerto Rico, where he worked from 1996 to 1998. When Cortez returned to the United States from his Puerto Rico assignment, he let it be known generally throughout the company that he wished to be promoted to general manager. He specifically asked Carlos Doubleday, the director of operations for Sam's Club stores in El Paso and Albuquerque, if any general manager positions were available in his region. Doubleday told him there were not. Accordingly, Cortez accepted a demotion and took a position as assistant manager of a store in El Paso.

From 1998 until his resignation in 2003, Cortez continued to press for promotions that never materialized. During that same time period, however, at least three other Sam's Club assistant managers were promoted to general manager positions in Texas and New Mexico. Two of those promoted were in their early 30's and the other was in his late 20's. Cortez told several executives in the company that he was concerned that he was being passed over because of his age. However, only one, Stephanie Sallinger, the personnel manager, ever followed up with him. When she did, she was under the apparently mistaken impression that a promotion for Cortez was imminent.

On October 30, 2003, Cortez filed a complaint against Sam's Club under the ADEA alleging that despite his qualifications Sam's Club consistently failed

to promote him because of his age.[3] He also alleged that he had filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on or about June 11, 2003, and had received a right-to-sue letter on or about August 4, 2003, within 90 days of filing his district court complaint. In its answer, Sam's Club denied that it had discriminated against Cortez and it also denied Cortez's allegations concerning the timeliness of his complaint. Sam's Club asserted statute of limitations as one of its affirmative defenses.

The case was tried to a jury in February 2005. At trial, Cortez argued that although he was qualified for the position of general manager, Sam's Club consistently denied him promotional opportunities in favor of younger employees, many of whom he had helped to train. With respect to his qualifications, Cortez argued that his long years of assistant managerial experience taught him the requisite skills to be a general manager. He also argued that he had already demonstrated his ability to be a general manager in his position as co-general manager of the store in Puerto Rico. In addition, he adduced evidence of his laudable role in opening a new store in Albuquerque in record time for the company.

Cortez also adduced evidence of what he argued was Doubleday's discriminatory motive for not promoting him to the general manager position. He

---

[3] Cortez also brought a Title VII race discrimination claim, but that claim was dismissed on summary judgment.

testified that in November 1999 in a conversation with Doubleday and Charles Wright, an assistant manager, Doubleday compared him and Wright to Troy Aikman of the Dallas Cowboys. Doubleday told them that just like Troy Aikman had reached a point in his career when it was time to step aside for a better, younger quarterback, so too was it time for Cortez and Wright to step aside in favor of younger managers. Wright corroborated this story with nearly identical testimony concerning the "Aikman conversation." Doubleday testified, however, that age never factored into his decision when it came to filling the general manager positions.

Sam's Club argued that Cortez was not promoted not because of his age, but because of the active performance "coaching" in his file, in accordance with its "Coaching for Improvement" policy. According to the *Club Manual*, "Coaching for Improvement occurs when an Associate's behavior (job performance or misconduct) fails to meet the Company's expectations."[4] Aplee. App. at 179. The manual goes on to explain that coaching for job performance is appropriate when an associate's behavior "does not meet the reasonable expectations/standards set for all Associates in the same or similar position." *Id.* at 183. Misconduct is defined as "behavior other than job performance, which falls below stated expectations, or violates Company policy, does or may interfere with safe, orderly, or efficient operations or which creates a hostile or offensive

---

[4] Sam's Club calls its employees associates.

environment for Associates, Customers, and/or Vendors." *Id.* The Coaching for Improvement section of the *Club Manual* also has a subheading entitled "File Retention/Active Period." That section provides that "Coaching for Improvement documentation must be maintained in the Associate's personnel file for 12 months under an 'active' status. Twelve months after the last Coaching for Improvement session, if the behavior does not reoccur, the Coaching for Improvement documentation becomes 'inactive'." *Id.* at 185.

Sam's Club adduced evidence that Cortez had received a written coaching on April 2, 2001, within one year of the promotion opportunities at issue, and it argued that under company policy, employees with an active coaching in their file are not eligible for promotion. This promotion eligibility aspect of the company's coaching policy is not mentioned in the Coaching for Improvement section of the *Club Manual*. Nonetheless, Sam's Club argued that it is a well-known, unwritten policy, and Cortez admitted on cross examination that there was such a policy when he was employed at Sam's Club. Cortez argued, however, that the coaching he received on April 2, 2001, was undeserved.

The written coaching itself, which was admitted into evidence, was issued by Greg Garner, Cortez's general manager. Garner's stated reason for the coaching was as follows:

> I am challenging Robert's [Cortez's] overall performance as a merchandise manager. There are certain duties Robert is responsible [sic]. Robert went on vacation and did not plan his business

accordingly. Robert did not leave any notes to be carried out. Robert did not complete the alcohol [move] that was asked of him. Robert did not leave specific training plans for his new associates to do. Robert's team leader ended up on vacation at the same time he was on vacation. Robert's overall performance as a manager needs to improve. These issues and opportunities were discussed with Robert in mid-February.

*Id*. at 187. Cortez testified that he challenged this coaching when he received it because it was issued while he was on vacation and he believed that Garner had mischaracterized his performance. Specifically, Cortez testified that he had not completed the alcohol move that Garner mentioned because the store had been waiting for a layout from the home office. With respect to his vacation overlapping with his team leader's, Cortez testified that Garner had approved the team leader's vacation without his knowledge after he had left for vacation. He further testified that he confronted Garner when he returned from vacation and "told him that basically he should be doing the things that are needed to be done in the club while I'm gone in my absence or move another one of the managers over to my area to make sure that the area does not deteriorate." *Id*. at 40.

Cortez also adduced evidence of Sam's Club's unwritten policy of coaching employees "out the door." He testified that Garner would encourage an employee to quit, i.e., coach him out the door, "if he didn't like the associate or the associate did have a performance issue or for any other reason he wanted that associate removed from the club." *Id.* at 50. He testified that he believed Garner was trying to coach him out the door in 2001 because his store was performing

badly and Garner did not want to accept full responsibility. Cortez further testified that Doubleday went along with Garner's plan to coach him out the door because Doubleday wanted to "wash his hands" of Cortez and his allegations of discrimination. *Id*. at 76-77.

Garner testified that the "coaching out the door" policy was directed at employees who consistently failed to meet expectations. Such employees, he testified, are "either going to perform or they're not going to perform, and sometimes we have to coach people out the door because they're not successful in our business." *Id*. at 170. Garner also testified that the decision of whether to coach an employee out the door was not always based on a supervisor's subjective criteria, but could be based on company expectations. He testified that he issued the April 2, 2001, coaching because Cortez went on vacation without leaving any specific instructions and left the alcohol display in an unpresentable condition.

At the close of evidence, the jury was instructed that in order to find for Cortez on the age discrimination claim, it would have to find that Cortez proved the following elements by a preponderance of the evidence: (1) that he was at least 40 years of age at the time he was denied a promotion; (2) that he applied for or sought an available promotion, and was qualified for that position; (3) that, despite his qualifications, he was not promoted to the position; and (4) that his age was a motivating factor or determining factor in Sam's Club's decision not to promote him. Sam's Club argues that it is entitled to judgment as a matter of law

because Cortez admitted that he was ineligible for promotion, and therefore failed to meet the second element of his claim.

## DISCUSSION

### I. Standard of Review

"[W]e review de novo the district court's denial of a motion for judgment as a matter of law." *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1278 (10th Cir. 1999). "[W]e do not weigh the evidence, evaluate the credibility of witnesses, or substitute our conclusions for those of the jury. We may reverse a jury determination only if the evidence points but one way and is not susceptible to any reasonable inferences supporting the nonmoving party." *Abuan v. Level 3 Commc'ns, Inc.*, 353 F.3d 1158, 1168 (10th Cir. 2003) (citation and quotation omitted). Whether judgment as a matter of law is appropriate in a discrimination case depends on a number of factors, including "the strength of the plaintiff's case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 148-49 (2000).

## II. Legal Framework

The ADEA makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In disparate treatment cases such as this, where the plaintiff alleges that he was singled out for discrimination, "liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision. That is, the plaintiff's age must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome." *Reeves*, 530 U.S. at 141 (citation, quotation, and alteration omitted). The plaintiff need not present direct evidence of discrimination, however, because we have held that the indirect method of proving discrimination set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803-04 (1973), applies in ADEA cases. *Ellis v. United Airlines, Inc.*, 73 F.3d 999, 1004 (10th Cir. 1996); *see Reeves*, 530 U.S. at 142 (assuming *arguendo* that the *McDonnell Douglas* framework applies in ADEA cases). The Supreme Court held in *Reeves* that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit [but does not require] the trier of fact to conclude that the employer unlawfully discriminated." 530 U.S. at 148.

We have traditionally distinguished between employment decisions based on objective criteria, which are generally immune to employer manipulation, and

those based on subjective criteria, "which are particularly easy for an employer to invent in an effort to sabotage a plaintiff's prima facie case and mask discrimination." *Ellis*, 73 F.3d at 1006, n.8. Under this dichotomy, a plaintiff who cannot meet objective hiring or promotion criteria cannot establish a prima facie case of discrimination, and the employer is entitled to judgment as a matter of law. *See, e.g., York v. AT&T*, 95 F.3d 948, 954 (10th Cir. 1996) (upholding jury verdict for employer where plaintiff failed to meet education and experience requirements); *Ellis*, 73 F.3d at 1006, n.8 (noting in dicta that the plaintiffs' failure to meet weight limit requirement for new flight attendants was fatal to their prima facie case).

On the other hand, a plaintiff's failure to meet subjective hiring or promotion criteria is not automatically fatal to the plaintiff's prima facie case. *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1193 (10th Cir. 2000); *Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1510 (10th Cir. 1997). In order to show that he is qualified for the position sought, the plaintiff need only establish that he does not suffer from "an absolute or relative lack of qualifications." *Horizon*, 220 F.3d at 1194. The plaintiff can make such a showing by presenting credible evidence that he possesses "the objective qualifications necessary to perform the job at issue." *Id.* The factfinder is free to consider the employer's subjective hiring or promotion criteria in the mix of plaintiff's circumstantial evidence of discrimination, but is not required to accept the employer's version of its

motivation. *See, e.g., McKnight v. GM Corp.*, 908 F.2d 104, 114 (7th Cir. 1990) ("[T]he company's lack of objective criteria for layoffs and recalls placed it at the mercy of the jury, which was free to disbelieve the company's testimony.").

### III. The No-Coaching Qualification

It is undisputed that Cortez received a written coaching on April 2, 2001, and Cortez admitted that Sam's Club has a policy with respect to promotions whereby employees are not eligible for a promotion within one year of receiving a written coaching. The question, therefore, is whether this no-coaching qualification is a truly objective criterion, such that Cortez's failure to establish it defeated his prima facie case. Sam's Club maintains that its no-coaching qualification is an objective measure that forms part of its promotion criteria. Since Cortez failed to establish its objective criteria, it argues that evidence of his other qualifications and evidence purporting to show Sam's Club's bias was irrelevant. We disagree.

Sam's Club cites *Monfort, Inc. v. NLRB*, 965 F.2d 1538 (10th Cir. 1992), for the proposition that an employee's disciplinary record is per se an objective measure. In that case, Monfort appealed from an NLRB finding that it had discriminated against former employees in rehiring based on union activity. Monfort had developed hiring criteria that considered, among other factors, the applicant's disciplinary record. We stated that "the specific [hiring] criteria relating to . . . discipline were based on objective factors," *id.* at 1541, and Sam's

-12-

Club relies on this language to support its argument. In that case, however, the focus was not on the objective versus subjective nature of the employer's hiring criteria. The focus was on Monfort's disparate treatment of former employees, who had accessible disciplinary records, and new applicants, who did not. We concluded that the hiring procedure was skewed in favor of new applicants because they were not evaluated based on a comparable level of information as former-employee applicants. *Id.* at 1542. Moreover, we criticized Monfort's system of analyzing disciplinary records of new applicants, because it depended "entirely on the subjective judgment of Monfort's personnel director." *Id.* at 1543. Therefore, our statement in that case that the specific hiring criteria at issue were based on objective factors should not be interpreted as a broader holding that employment criteria based on disciplinary history are per se objective.

Certainly, as Sam's Club argues, the question of whether an employee has an active coaching in his file can be objectively answered. The problem, however, is that the coaching itself can be premised on almost limitless subjective bases, and in that regard it is only facially objective. Garner's testimony that a coaching is "[n]ot always" based on the subjective opinions of a supervisor, Aplee. App. at 170, leads to the inevitable conclusion that, at least sometimes, it is. Moreover, Cortez presented evidence that his coaching was based on Garner's

subjective opinion about his performance. Cortez argued at trial that the coaching was undeserved and gave specific reasons why.

We have long respected employers' wide latitude "in setting job standards and requirements and in deciding whether applicants meet those standards." *Hickman v. Flood & Peterson Ins., Inc., 766 F.2d 422, 425 (10th Cir. 1985).* Thus, we have held that "[i]t is not the fact finder's task to assess which of an employer's stipulated qualifications ought to be required of applicants for a particular position." *York*, 95 F.3d at 954. Moreover, a plaintiff cannot prove that he was discriminated against simply because an employment decision was based on subjective criteria. As one court aptly put it, however, "just as use of [subjective] criteria does not establish discrimination, cloaking such criteria with an appearance of objectivity does not immunize an employment decision from a claim of discrimination." *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 321 (3rd Cir. 2000).

There are undoubtedly legitimate business reasons for the no-coaching aspect of Sam's Club's promotion policy. Unlike truly objective criteria, however, similar to those at issue in *York* and *Ellis*, the no-coaching qualification can be used as a tool for unlawful discrimination. That Sam's Club chooses to call the qualification an objective measure does not make it so. Therefore, we conclude that Cortez's admission that he received a coaching within one year of the promotions at issue was not fatal to his prima facie case, and the district court

-14-

did not err by submitting the case to the jury. Under the standard set forth in *Reeves*, the jury was entitled to infer discrimination based on Cortez's prima facie case, combined with sufficient evidence to find that Sam's Club's asserted justification for not promoting him was false. 530 U.S. at 148.

### IV. Sufficiency of the Evidence

Within this legal framework, we must now decide whether the evidence supported the jury's finding of discrimination, keeping in mind that "it is not the function of the appeals court to reverse merely if it believes the evidence might have supported a different verdict." *Kenworthy v. Conoco, Inc.*, 979 F.2d 1462, 1468 (10th Cir. 1992). Unless Sam's Club can show that there is no evidentiary basis to support the verdict, we will not disturb the jury's determination, "even where there is substantial contradictory evidence that could have supported an opposite verdict." *Id.* Sam's Club has not made such a showing.

At trial, Cortez presented evidence that he had more than ten years of assistant managerial experience at Sam's Club and that he had earned accolades for his leadership in opening a new store in Albuquerque during the same time period that he was seeking a promotion. He was also the co-general manager of a Sam's Club store in Puerto Rico for three years where he shared responsibility with the general manager for the entire store's operations. He also testified that he lost out on promotions even as he was receiving above-average performance ratings. Sam's Club challenged Cortez's qualifications. It adduced evidence that

Cortez had received declining performance evaluations and written coachings during the relevant time period and that certain of Cortez's managers had not recommended him for promotion. Viewed in the light most favorable to Cortez, however, we conclude that the evidence could have convinced a rational jury that Cortez was objectively qualified to be a general manager. This evidence, combined with the relatively young age of the individuals who received the challenged promotions was sufficient to establish a prima facie case of discrimination.

There was also sufficient evidence from which the jury could have inferred that Cortez was not promoted for reasons other than the April 2, 2001, coaching. Although both Cortez and Garner testified to Sam's Club's practice of not promoting individuals with active coachings, the policy appears nowhere in the company manual's detailed description of the "Coaching For Improvement" policy. Moreover, Sam's Club points to no evidence that it ever told Cortez that he was ineligible for promotion even though he approached several company executives about what he perceived was Doubleday's unjustified refusal to promote him. Cortez testified that he believed the coaching was undeserved and was part of a long line of coachings designed to coach him out the door. Finally, both Cortez and Charles Wright testified that Doubleday specifically told them that they needed to step aside so that "younger" managers could take over. Aplee. App. at 5, 102, 105. Given that Cortez established a prima facie case of

-16-

discrimination, introduced enough evidence for the jury to reject Sam's Club's explanation, and produced additional evidence of age-based animus, there was sufficient evidence for the jury to find that Sam's Club discriminated against him. *See Reeves*, 530 U.S. at 153-54.

## V. Timeliness of the Complaint

Finally, Sam's Club contends that it is also entitled to judgment as a matter of law because Cortez failed to establish at trial that his complaint was filed within 90 days of receiving his right-to-sue letter from the EEOC. *See* 29 U.S.C. § 626(e). We conclude, however, that Sam's Club's statute of limitations defense has been waived. Sam's Club raised this issue as an affirmative defense in its answer and again in its Rule 50(a) motion during trial, but nowhere in the pretrial order did Sam's Club contest the timeliness of Cortez's complaint. We were faced with a similar situation in *Youren v. Tintic School District*, 343 F.3d 1296, 1304 (10th Cir. 2003). There, we held that the defendants' assertion of the statute of limitations defense in its answer and Rule 50(a) motion did not "overcome[] the Pretrial Order Rule, embodied in Rule 16(e) of the Federal Rules of Civil Procedure."

Rule 16(e) provides that the pretrial order "shall control the subsequent course of the action unless modified by a subsequent order." The purpose of the rule is to "replace the old sporting theory of justice with a policy of putting the cards on the table." *Wilson v. Muckala*, 303 F.3d 1207, 1216 (10th Cir. 2002)

-17-

(quotations omitted) (citing *Clark v. Penn. R.R. Co.*, 328 F.2d 591, 594 (2d Cir. 1964)).  At the pretrial conference attorneys are expected to fully and fairly disclose "their views as to what the real issues of the trial will be." *Youren*, 343 F.3d at 1304.  Accordingly, we have held that issues not contained in the resulting pretrial order were not part of the case before the district court.  *Id.*; *Wilson*, 303 F.3d at 1215 ("[C]laims, issues, defenses, or theories of damages not included in the pretrial order are waived . . . .").  Since Sam's Club failed to challenge the timeliness of Cortez's complaint in the pretrial order,[5] we hold that the issue has been waived and decline to reach the merits of this argument.

The judgment of the district court is AFFIRMED.

---

[5]    We note that in the pre-trial order Sam's Club did challenge the timeliness of Cortez's EEOC complaint, but that was not sufficient to preserve the issue of whether his district court complaint was timely filed.