PUBLISH

## UNITED STATES COURT OF APPEALS

## TENH CIRCUIT

---

LOUIS HAROLD NORTON,

    Plaintiff-Appellant,

v.

THE CITY OF MARIETTA,
OKLAHOMA, a municipal
corporation; LOVE COUNTY BOARD
OF COMMISSIONERS; MARION
JOE RUSSELL, Sheriff of Love
County; JEFF POTEET; RAYMOND
DUCHARME; JOHN DOES;
STEPHANIE LEE; MIKE BUXTON;
CASEY LAWSON; CHARLIE
HUGHES; IVAN KNOWLES; ERIK
GRISHAM; JAMES DIGGS;
BARNEY BEAVERS,

    Defendants-Appellees.

No. 04-7133

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
(D.C. No. CV-04-38-W)**

---

Submitted on the briefs:

Corrine O'Day, Locke & Moore, Muskogee, Oklahoma, for Appellant.

Charles D. Neal, Jr., Eric D. Janzen, Steidley & Neal, McAlester, Oklahoma,
Jason C. Wagner, Stephen L. Geries, Oklahoma City, Oklahoma, for Appellees.

Before **HENRY**, **ANDERSON**, and **TYMKOVICH**, Circuit Judges.

**PER CURIAM**.

Plaintiff Louis Harold Norton appeals from eight separate orders granting summary judgment and dismissing his 42 U.S.C. § 1983 action arising out of his alleged mistreatment while he was incarcerated in the Love County jail in Marietta, Oklahoma. Plaintiff raises three issues on appeal. First, he contends that there were material facts in dispute that precluded summary judgment. Second, he contends that the district court erred in granting summary judgment based on the claims alleged in the Amended Complaint when plaintiff had clarified his claims in the proposed pre-trial order. Lastly, plaintiff challenges the district court's denial of his motion to compel discovery against the Love County defendants.

We exercise jurisdiction pursuant to 28 U.S.C. § 1291. For the reasons discussed below, we reverse in part and affirm in part the district court's grant of summary judgment in favor of defendants Marion Joe Russell, Jeff Poteet, and

Raymond Ducharme, and we remand for further proceedings.[*] We affirm summary judgment with respect to the City of Marietta, Mike Buxton, Casey Lawson, Charlie Hughes, Ivan Knowles, Erik Grisham, and Barney Beavers. We conclude that the district court correctly ruled based on the claims alleged in the Amended Complaint rather than the proposed pre-trial order, and we find no abuse of discretion concerning the district court's denial of plaintiff's motion to compel discovery.

## I. Background

Plaintiff was incarcerated in the Love County jail from September 2002 to March 2003. On January 28, 2004, he filed a pro se complaint against the City of Marietta (City); the Love County Board of Commissioners;[1] Marion Joe Russell, the Sheriff of Love County; and Jeff Poteet and Raymond Ducharme, two Marietta police officers. On February 27, 2004, plaintiff amended his complaint to add the rest of the individual defendants, all of whom worked at the jail during his incarceration. In his Amended Complaint, plaintiff claimed that defendants

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

[1] Plaintiff does not appeal the district court's order granting the Board of Commissioner's motion for summary judgment.

physically assaulted him in violation of his constitutional rights under the Fourth and Fourteenth Amendments. Because his excessive force claims stemmed from incidents that occurred while he was an inmate, the district court construed the claims as arising under the Eighth Amendment. The court also construed the Amended Complaint as stating a Fourteenth Amendment equal protection claim and state law claims for false imprisonment and assault and battery.

On April 15, 2004, counsel entered an appearance for plaintiff, and over the next five months, the parties engaged in discovery and trial preparation. On September 10, 2004, the City defendants (the City, Poteet, Ducharme, Buxton, and Diggs [2]) filed a joint motion for summary judgment. That motion was followed on September 17, 2004, by separate summary judgment motions filed by each of the remaining defendants.

While the summary judgment motions were pending, the parties submitted a proposed pre-trial order to the court. Plaintiff included in his description of his claims a variety of allegations about conditions of his confinement that he had not alleged in the Amended Complaint, including the denial of a special diet and other medical care and the denial of legal materials and access to the courts. Plaintiff did not, however, seek to amend his complaint to add claims based on

---

[2]    James Diggs was subsequently dismissed with prejudice pursuant to a joint stipulation.

these allegations. Defendants objected to plaintiff's inclusion in the proposed pre-trial order of any allegations or claims that were not in the Amended Complaint. At the pre-trial conference held on October 14, 2004, the district court ordered the parties to revise and resubmit the proposed pre-trial order by October 28. They never did so, however, because by then the court had granted all of defendants' summary judgment motions, finding that defendants' actions did not rise to the level of constitutional violations. For the most part, the district court declined to exercise supplemental jurisdiction over plaintiff's state law claims. However, it appears that the district court dismissed some of the state law assault and battery claims on the merits.

Plaintiff argues that the district court's dismissal of his case on summary judgment was based on impermissible credibility determinations and findings of fact in favor of defendants. He also argues that it was error for the district court to rule on the summary judgment motions without first resolving the parties' dispute over which claims would be included in the pre-trial order. Plaintiff argues that the district court should not have granted summary judgment based solely on the claims alleged in the Amended Complaint because the discovery process made it clear to all the parties that plaintiff had suffered constitutional deprivations beyond those specifically pled in the pro se Amended Complaint. Finally, he contends that the district court erred in denying his motion to compel

discovery against the Love County defendants. We address these arguments below along with the relevant facts as they relate to plaintiff's claims against each defendant.

## II. Administrative Exhaustion

Before turning to the merits of plaintiff's claims, we must first consider the issue of administrative exhaustion. The Prison Litigation Reform Act (PLRA) imposes specific filing requirements on prisoners seeking to file civil actions regarding prison conditions, which include "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong," *Porter v. Nussle*, 534 U.S. 516, 532 (2002). One requirement is that a prisoner exhaust all available administrative remedies before bringing suit. 42 U.S.C. § 1997e(a). Exhaustion under § 1997e(a) is mandatory, *Porter*, 534 U.S. at 524, and we have held that the fact of exhaustion must be specifically pled by the plaintiff, *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1210 (10th Cir. 2003). In particular, the plaintiff must "attach a copy of the applicable administrative dispositions to the complaint, or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome." *Id.* (quotation marks and brackets omitted).

Because plaintiff did not plead exhaustion in his Amended Complaint, we issued an order directing him to show cause why his case should not be dismissed for failure to exhaust, and we invited the defendants to file a reply to the plaintiff's submission. *See Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1238, 1240 (10th Cir. 2005) (reversing merits disposition and remanding to district court to dismiss action without prejudice for failure to exhaust administrative remedies). In response, plaintiff argued that he was not required to exhaust his administrative remedies because he was not incarcerated at the time he filed suit. The defendants did not reply. This is an issue of first impression in the Tenth Circuit, but one on which our sister circuits are in accord.

Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The PLRA defines "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h).

In light of the PLRA's plain language, the other circuits to have addressed the issue have unanimously held that it is the plaintiff's status at the time he files

-7-

suit that determines whether § 1997e(a)'s exhaustion provision applies. *See Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir. 2005) (per curiam); *Witzke v. Femal*, 376 F.3d 744, 750 (7th Cir. 2004); *Cox v. Mayer*, 332 F.3d 422, 424-25 (6th Cir. 2003); *Ahmed v. Dragovich*, 297 F.3d 201, 210 (3d Cir. 2002); *Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 35 (1st Cir. 2002); *Page v. Torrey*, 201 F.3d 1136, 1140 (9th Cir. 2000); *Greig v. Goord*, 169 F.3d 165, 167 (2d Cir. 1999) (per curiam). Therefore, other circuits have concluded that a plaintiff who seeks to bring suit about prison life after he has been released and is no longer a prisoner does not have to satisfy the PLRA's exhaustion requirements before bringing suit. *Nerness*, 401 F.3d at 876; *Ahmed*, 297 F.3d at 210; *Page*, 201 F.3d at 1140; *Greig*, 169 F.3d at 167.

We agree with our sister circuits. The statutory language is plain and unambiguous: no "prisoner confined in a jail, prison, or other correctional facility" may bring a suit concerning prison life until he first exhausts his administrative remedies. 42 U.S.C. § 1997e(a). Therefore plaintiff, who was not a prisoner confined in a jail, prison, or other correctional facility when he brought suit, did not have to exhaust his administrative remedies first.

Further, we do not find this reading "an absurd and unjust result which Congress could not have intended," such that we should not apply the plain statutory language in this fashion. *Robbins v. Chronister*, 402 F.3d 1047, 1050

-8-

(10th Cir. 2005), *reh'g en banc granted*, No. 02-3115 (10th Cir. Aug. 15, 2005). [3]

Rather, distinguishing between current and former prisoners "is compatible with the purpose of the PLRA. Prisoners often have an abundance of time, while facing a restricted number of enjoyable activities with which to pass the time other than filing suits." *Witzke*, 376 F.3d at 750; *see also Greig*, 169 F.3d at 167 (noting two senators' statements about the incentives for prisoners to file suit); *Kerr v. Puckett*, 138 F.3d 321, 323 (7th Cir. 1998) ("Congress deemed prisoners to be pestiferous litigants because they have so much free time on their hands and there are few costs to filing suit."). Once a prisoner is released, however, "[o]pportunity costs of litigation rise . . . , diminishing the need for special precautions against weak suits." *Kerr*, 138 F.3d at 323. Applying the plain language of § 1997e(a), we conclude that plaintiff was not required to exhaust his administrative remedies and his case is not subject to dismissal for failure to exhaust. We turn, then, to the merits of plaintiff's appeal.

---

[3] Our decision is not irreconcilable with the majority decision in *Robbins*, which held that applying the plain language of the PLRA's attorney fee cap to an inmate's suit for civil rights violations that occurred before he happened to be incarcerated would produce an absurd result that Congress did not intend. 402 F.3d at 1054. The *Robbins* majority's reasoning was based primarily on factors that are not present here.

### III. The Proposed Pre-Trial Order

Through his counsel, plaintiff inserted allegations in the proposed pre-trial order to support a variety of Eighth Amendment conditions of confinement claims and First Amendment denial of access claims. Plaintiff repeats some of those allegations on appeal, where he is also represented by counsel. Specifically, plaintiff notes that he was denied his medically-required special diet, which caused him to lose forty pounds, that he was denied medical care, and that he was denied access to the law library. Defendants objected to the insertion of these and other allegations in the proposed pre-trial order because they were not pled in the Amended Complaint. Defendants did not address these allegations in their motions for summary judgment, which responded only to the claims asserted in the Amended Complaint. Ultimately, the district court disposed of the entire case on summary judgment without directly addressing the parties' dispute over the pre-trial order. The district court did note in its summary judgment orders, however, that plaintiff's responses to the summary judgment motions contained allegations and causes of action not pled in the Amended Complaint, which the court said were not properly before it.

Plaintiff argues that the district court's dismissal was premature and in error. He argues that defendants were adequately put on notice of all his claims through the discovery process, his trial brief, and his contributions to the

proposed pre-trial order, and accordingly "it was error for the trial judge to dismiss the case without addressing the additional issues clarified after the Amended Complaint was filed." Aplt. Br. at 8. We are not persuaded.

Plaintiff correctly points out that entry of a pre-trial order would have clarified the issues for trial and eliminated the need to amend previously filed pleadings, *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002), but this argument ignores the key fact that the proposed pre-trial order was never finalized and entered in this case. Plaintiff may have been confident that defendants knew the true nature of his constitutional claims, but it is undisputed that the conditions of confinement and denial of access claims appear nowhere in the Amended Complaint.

The responsibility for ensuring that one's claims are properly presented lies with the litigant, not the court. If plaintiff was concerned that some of his constitutional claims were omitted from the Amended Complaint, the proper course would have been to file a motion to amend rather than to hope that the district court would enter an expansive pre-trial order before ruling on dispositive motions. Having failed to submit a second amended complaint, plaintiff will not be heard to complain about the court's and defendants' reliance on his last operative pleading, the Amended Complaint. *See, e.g., Green Country Food Mkt., Inc. v. Bottling Group, LLC*, 371 F.3d 1275, 1280-81 (10th Cir. 2004) (holding

that while Fed. R. Civ. P. 15(b) permits implied amendments to conform to the evidence, if an opposing party objects to an implied amendment, then the complaining party must file a motion to amend and the opposing party must fail to demonstrate prejudice from the proposed amendment, before the district court may allow the amendment). We find no error in the district court's decision to rule on the summary judgment motions before the pre-trial order was finalized.

## IV. Summary Judgment

### A. Standard of Review

> We review the entire record on summary judgment de novo in the light most favorable to the party opposing summary judgment. We must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. Where different ultimate issues may properly be drawn, the case is not one for a summary judgment.

*Seamons v. Snow*, 206 F.3d 1021, 1026 (10th Cir. 2000) (citations and quotation marks omitted). As we have pointed out, "cases involving constitutional or civil rights frequently are unsuitable for summary judgment because a necessary element of the claim for relief presents an inquiry into the state of mind of one or more of the parties." *Id.* at 1028 n.2 (quotation marks omitted). Of course, summary judgment is appropriate in any case "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

### B. Marion Joe Russell, Raymond Ducharme, and Jeff Poteet

At the time of plaintiff's incarceration, defendant Russell was the Sheriff of Love County, and Poteet and Ducharme were Marietta police officers. The parties do not dispute that on December 23, 2002, Russell, Poteet and Ducharme entered plaintiff's cell, restrained him, handcuffed him to a backboard, and

-13-

sprayed him with pepper spray. However, all of the other facts relating to this "backboard incident" are in dispute.

Defendants contend that the incident began with an argument between plaintiff and defendant Knowles, a sheriff's deputy, over how many vitamins plaintiff would receive that day. According to Sheriff Russell, plaintiff's uncontroverted deposition testimony establishes that he became upset with Knowles and started kicking his cell door, which prompted other inmates to kick their cell doors. Knowles ordered plaintiff to stop kicking, but plaintiff kicked the cell door at least one more time. Knowles responded by calling Sheriff Russell to the jail, who brought in officers Poteet and Ducharme. Russell, Poteet, and Ducharme entered plaintiff's cell with a backboard, a device used to restrain inmates, and ordered plaintiff to get on the backboard. Plaintiff refused and then resisted as the officers physically put him on the backboard. [4] Russell concedes that during the incident, plaintiff was sprayed with pepper spray, probably by Officer Ducharme. Plaintiff ceased resisting the officers after he was sprayed. Russell contends that the use of pepper spray was warranted under the

---

[4] When asked at his deposition whether he complied with the officers' orders to get on the backboard, plaintiff responded: "Not exactly. I did go down, but I didn't lay on the board." Love County Suppl. App. at 121. Regarding his resistance, plaintiff testified: "[T]hey did reach for my arm one time, and pulled it out, and I did pull it back." *Id.* Plaintiff conceded that he did not cooperate with the officers. *Id.* at 121-23.

-14-

circumstances because it was necessary to maintain order and restore discipline. This is apparent, he argues, from the fact that after plaintiff was sprayed, he stopped resisting the officers' efforts to restrain him.

Poteet and Ducharme claim that plaintiff's kicking the cell door incited the other inmates to begin kicking, yelling, and screaming, and that the situation became riotous. They contend that when plaintiff was ordered to lie down on the backboard, he became combative and that the use of force and pepper spray was necessary to regain control of the situation.

Plaintiff denies that he was combative. He maintains that the situation was never riotous and that the force used and the pepper spray were unnecessary to restrain him. In support, plaintiff points to Poteet's deposition testimony that at the time of the incident plaintiff was in his sixties, whereas Poteet was only twenty-two years old and Ducharme was thirty-two or thirty-three. Plaintiff also provided an affidavit from fellow inmate Lynwood Moore, who averred that he personally witnessed the backboard incident. [5] According to Moore, although

---

[5] Defendants object to the inclusion of Moore's and certain other inmates' affidavits in plaintiff's appendix because they are not file-stamped copies and plaintiff did not explain how these documents were before the district court. We too are dismayed by the state of plaintiff's appendix (prepared by counsel), which hindered rather than assisted our review of this appeal. Nonetheless, plaintiff does state that these affidavits were included in his response to the summary judgment motions (Aplt. Br. at 7) and none of the defendants disputes this contention. Accordingly, we consider Moore's affidavit as part of the district
(continued...)

-15-

plaintiff and some other inmates did kick their cell doors that night, the situation in the jail never became riotous. He averred that plaintiff sat down on the backboard when ordered to do so, but told the officers that he did not want to lay down. He stated that Sheriff Russell sat on plaintiff's lower body while the other officers held his arms. Plaintiff resisted out of instinct, but did not become combative.

With respect to the pepper spray, Moore averred that one of the police officers "was holding the can about two inches from [plaintiff's] eyes" and "was waving the can around like he was spray-painting [plaintiff's] face. He sprayed . . . 5-7 seconds." Aplt. App. at 203. Moore stated that after they sprayed plaintiff, they handcuffed his arms and legs to the board and then one of the officers held plaintiff's head back and tossed some water in his eyes. Finally, Moore stated that after the officers removed plaintiff from the cell, he could hear plaintiff crying and begging for hours to be let up, telling the officers that he was in pain, but that the officers kept telling plaintiff to shut up. This evidence is consistent with plaintiff's deposition testimony that the pepper spray "soaked [him] pretty good," Love County Suppl. App. at 123. Plaintiff testified: "It was

_____

[5](...continued)
court record and will therefore consider it on appeal. All of the other affidavits submitted by plaintiff pertain to his conditions of confinement and denial of access claims, which we have already concluded were not properly before the district court.

running plumb down between my legs, even on the first spray – and down my lungs, my nostrils, my eyes. I was soaked." *Id.*

"[P]epper spray is an instrument with which prison officers wield their authority, or force, and thus its use implicates the excessive use of force." *DeSpain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001). To succeed on his excessive use of force claim, plaintiff must show (1) that the alleged wrongdoing was objectively harmful enough to establish a constitutional violation; and (2) that defendants acted with a sufficiently culpable state of mind. *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003). "The objective component . . . is contextual and responsive to contemporary standards of decency. The subjective element . . . turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* (citation and quotation marks omitted).

In this case, the facts relevant to both the objective and subjective elements of the excessive force test are hotly contested. Whether defendants' use of the spray was objectively harmful enough to violate plaintiff's Eighth Amendment rights turns in part on how long plaintiff was sprayed and whether he was adequately irrigated afterwards or left to suffer unnecessarily. The parties dispute these issues. They also disagree as to whether defendants sprayed plaintiff in a

-17-

good faith effort to restore discipline or maliciously and sadistically for the purpose of causing harm.

The district court concluded that "the fact that the Plaintiff may have been injured was not the intent of the Defendants. The intent was to restrain the Plaintiff until he was willing to comply with jailhouse rules." Aplt. App. at 22, *see also id.* at 25. The court also found that it was plaintiff who "created the necessity for the use of force." *Id.* at 22. Given the dearth of evidence in the record, the district court could not have reached these conclusions unless it chose to believe defendants over plaintiff. However, "a judge may not evaluate the credibility of witnesses in deciding a motion for summary judgment." *Seamons*, 206 F.3d at 1026. "In cases which involve delving into the state of mind of a party, the granting of summary judgment is especially questionable." [6] *Id.* at 1028 (quotation marks and brackets omitted).

Because we conclude that genuine issues of material fact exist surrounding defendants' use of pepper spray, we reverse the district court's grant of summary judgment with respect to plaintiff's Eighth Amendment claim against defendants

---

[6] Although we do not address plaintiff's conditions of confinement and denial of access claims, we have not ignored the affidavits submitted by plaintiff describing his alleged mistreatment while incarcerated. *See* Aplt. App. at 68-70, 71-73, 74-77. This evidence, which tends to show that plaintiff may have been generally disliked by jail personnel, renders even more problematic the district court's findings of fact with respect to defendants' state of mind with regard to the use of excessive force.

-18-

Russell, Poteet, and Ducharme. We also vacate the district court's merits dismissal of plaintiff's state law claim for assault and battery against these defendants and remand for further proceedings consistent with this decision. [7]

Plaintiff contends that the district court failed to address his Fourteenth Amendment claim. This is incorrect. Rather, the district court simply dismissed the claim, citing *Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002). In *Thompson*, we reiterated the general rule that a prisoner asserting an equal protection claim must show how he was treated differently based on a suspect classification and not based on a legitimate penological purpose. *Id.* Even assuming all of plaintiff's allegations are true, he has not alleged that any of the defendants treated him differently based on his membership in a suspect class. Accordingly, to the extent that plaintiff's claims against any of the defendants are brought under the Fourteenth Amendment, we affirm the district court's dismissal of those claims.

### C. The City of Marietta

Plaintiff also appeals the district court's grant of summary judgment to the City. Plaintiff seeks to hold the City responsible for the actions of its officers,

---

[7] Our vacation of the district court's premature merits ruling does not prevent the district court from declining to exercise supplemental jurisdiction over plaintiff's state law claims on remand.

-19-

Poteet and Ducharme, and argues that the police officers' use of the backboard violated state law.

> A municipality cannot, however, be held liable for the actions of its employees under the theory of respondeat superior. Instead, it must be shown that the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action.

*Seamons*, 206 F.3d at 1029 (citation omitted). Plaintiff fails to identify any official policy or custom of the City which resulted in the deprivation of his constitutional rights. His conclusory allegation that the use of the backboard violated Oklahoma law is insufficient to state a constitutional claim against the City. Accordingly, the district court's grant of summary judgment to the City of Marietta is affirmed.

### D. Mike Buxton

Defendant Mike Buxton was the Marietta Chief of Police during the relevant period. When plaintiff was asked at his deposition whether Buxton ever participated in an assault and battery upon him, he responded: "Not directly. Maybe he indirectly influenced the ones that – in the [back]board incident." City Suppl. App. at 20-21. However, when questioned further, plaintiff conceded that he had no evidence of Buxton's indirect involvement in the backboard incident.

-20-

Setting aside the conditions of confinement allegations, the entirety of plaintiff's Eighth Amendment claim against Buxton is based on some allegedly disparaging remarks that Buxton made about plaintiff in front of jail personnel. Even assuming the truth of such allegations, a police officer's disparaging remarks about an inmate clearly do not give rise to a constitutional violation. Accordingly, we affirm the district court's grant of summary judgment with respect to Mike Buxton.

*E. Ivan Knowles, Charlie Hughes, Stephanie Lee, Casey Lawson*

Defendants Knowles, Hughes, Lee, and Lawson were sheriff's deputies working at the Love County jail during plaintiff's incarceration. Plaintiff conceded at his deposition that none of these defendants ever physically assaulted him. However, he argues on appeal that these defendants "were involved in the conditions of confinement claims and state law claims of assault and battery." Aplt. Br. at 17. We have already held that since plaintiff failed to include allegations relating to his conditions of confinement in his Amended Complaint, such claims were not properly before the district court when it ruled on defendants' summary judgment motions. Moreover, plaintiff's concession that none of these defendants ever physically assaulted him is fatal to any Eighth Amendment claim based on the use of excessive force. *See DeSpain*, 264 F.3d at 978 (holding that "the ultimate constitutional inquiry is directed at whether an unnecessary and wanton infliction of pain has occurred") (quotation marks omitted). Therefore, we conclude that the district court properly dismissed plaintiff's constitutional claims against these defendants.

*F. Erik Grisham and Barney Beavers*

Defendants Grisham and Beavers were also sheriff's deputies working in the jail during the relevant period. Plaintiff claims that he had physical

altercations with each of these defendants that resulted in a violation of his constitutional rights. Plaintiff testified that Grisham once came to his cell in response to a plumbing problem and ordered him to lay on his bed. Instead of complying with that order, plaintiff squatted down, at which point Grisham "grabbed [him] around the neck and went to twisting it and hurting it." Love County Suppl. App. at 299. He also testified that Beavers once came to his cell to look for something and plaintiff stepped towards him and fell. According to plaintiff, Beavers then grabbed him around the neck and "kind of hurt [him]." *Id.* at 350. Both Grisham and Beavers deny that they used excessive force against plaintiff.

Even accepting plaintiff's version of these events as true, we fail to see how these defendants' actions were objectively harmful enough to establish a constitutional violation. *See Smith*, 339 F.3d at 1212. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *DeSpain*, 264 F.3d at 978 (quotation marks omitted). Plaintiff points to no evidence indicating that the officers' physical response on these occasions was excessive under the circumstances, and we see no such evidence in the record before us. Accordingly, we affirm the district court's grant of summary judgment with respect to defendants Grisham and Beavers.

V. Plaintiff's Motion to Compel Discovery

Plaintiff also appeals from the district court's order denying his motion to compel discovery, filed October 12, 2004. [8] The discovery in question sought the criminal records of the Love County defendants, Russell, Lee, Lawson, Hughes, Knowles, Grisham, and Beavers. We review a district court's ruling denying a motion to compel for an abuse of discretion. *Cummings v. GMC*, 365 F.3d 944, 952 (10th Cir. 2004). "Under this standard, we will not disturb a trial court's decision absent a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Id.* at 953 (quotation marks omitted).

It is clear from the district court docket sheet that plaintiff filed his motion to compel well after the close of discovery and only two days before the pre-trial conference. Under these circumstances, we cannot conclude that the district court abused its discretion in denying plaintiff's late motion.

---

[8] Although plaintiff's notice of appeal failed to designate the order denying his motion to compel as required by Fed. R. App. P. 3(c), plaintiff's designation of the final judgment is sufficient to support our review of all earlier interlocutory orders. *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1382 n.7 (10th Cir. 1994).

-24-

VI.  Conclusion

Accordingly, the summary judgment orders in favor of defendants Russell, Poteet, and Ducharme are **REVERSED** in part, **AFFIRMED** in part, and the case is **REMANDED** for further proceedings.  The summary judgment orders in favor of defendants City of Marietta, Buxton, Lee, Lawson, Hughes, Knowles, Grisham, and Beavers are **AFFIRMED**.  The order denying plaintiff's motion to compel discovery is **AFFIRMED**.