**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 15, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

THOMAS EUGENE GRASS,

              Plaintiff-Appellant,

v.

KELLY JOHNSON,

              Defendant-Appellee.

No. 07-5152
(D.C. No. 4:04-cv-00478-TCK-PJC)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **BALDOCK**, **BRORBY**, and **EBEL**, Circuit Judges.

        Plaintiff Thomas Eugene Grass, proceeding pro se, challenges the district

court's award of summary judgment to defendant Kelly Johnson on his Fourth

Amendment claim of excessive force brought under 42 U.S.C. § 1983.  We have

jurisdiction under 28 U.S.C. § 1291 and we reverse.

_____

[*]        After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is
therefore ordered submitted without oral argument.  This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel.  It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.

On the evening of May 15, 2004, Johnson, a police officer for the City of Jay, Oklahoma, arrested Grass for driving under the influence of alcohol and took him to the Delaware County Jail. It is undisputed that Johnson handcuffed Grass and strapped him into the patrol car without incident. What happened next lies at the heart of this lawsuit. Grass, in a verified complaint filed June 14, 2004, claimed Johnson mistreated him during the course of the arrest because Grass is Native American. Specifically, he alleged that after he was handcuffed and seat-belted in the patrol car, Johnson punched him in the face, giving him a black eye. Johnson denies harboring prejudice towards Native Americans and specifically denies striking Grass. He claims to have made the arrest without using any force except what was necessary to guide Grass to his patrol car.

The *Martinez* report submitted by the City of Jay reveals that Grass did sustain an injury to his eye between the time he was pulled over and the next morning. According to the report, the morning after Grass's arrest, officer Branden Barden observed a small area of swelling around his right eye. When Barden asked Grass about the injury, Grass told him his arresting officer had beat him up. The injury was also observed by Grass's arraigning judge, who recalled that a Native American with some sort of facial injury appeared before him and inquired into pressing charges against the arresting officer. The booking documents, however, reflect no injuries to Grass at the time of booking. To the

-2-

contrary, the medical information section of one document indicates Grass had no injuries or disabilities. And the "Book-In Checklist" likewise contains no information in the section where visible marks or injuries should be recorded. Lonnie Hunter, the booking officer, stated he had no recollection of booking Grass on the night in question. He noted, however, that if Grass had arrived at the jail with an injury, department policy would have required him to record that fact in the booking documents. No mug shot was taken of Grass at the time of booking. According to Hunter, department policy dictates that a mug shot is only taken if the arrestee does not already have one on file or it is out of date or if the arrestee arrives at the jail with visible signs of injury.

Johnson moved for summary judgment on this evidence, arguing it was uncontroverted Grass arrived at the jail unharmed. In addition to his own affidavit, he submitted as evidence the book-in documents and affidavits from Hunter, repeating what he said in the *Martinez* report, and the Chief of Police, who testified he had never received any complaints about Johnson's treatment of Native Americans. Grass countered with his own affidavit, repeating the allegations made in his complaint. He also accused Hunter of lying in his affidavit in order to protect Johnson and stated that Hunter did not even complete the booking documents until the morning after the arrest. On September 13, 2007, the district court granted Johnson's motion and dismissed the case, articulating two bases for its decision. First, it concluded the evidence was

insufficient to raise a fact issue concerning whether Johnson hit Grass during the course of the arrest. And second, it reasoned that even if Johnson did hit him, Grass sustained only a de minimis injury, which cannot support a Fourth Amendment claim as a matter of law. Consequently, it held the issue of whether Johnson hit Grass was immaterial, and explained that "[o]nly *material* factual disputes preclude summary judgment; *immaterial* disputes are irrelevant." R. Doc. 39 at 5 (emphasis added). This appeal followed.

## II.

## A.

"We review a district court's grant of summary judgment de novo, using the same standards applied by the district court." *Oliveros v. Mitchell*, 449 F.3d 1091, 1095 (10th Cir. 2006) (quotation omitted).

> We review the entire record . . . in the light most favorable to the party opposing summary judgment. We must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. Where different ultimate issues may properly be drawn, the case is not one for a summary judgment.

*Norton v. City of Marietta*, 432 F.3d 1145, 1152 (10th Cir. 2005) (quotation omitted). Nor is resolution by summary judgment appropriate if it requires the district court to make credibility determinations to reach its decision. *See id.* at 1154 ("[A] judge may not evaluate the credibility of witnesses in deciding a motion for summary judgment.") (quotation omitted). Summary judgment should be rendered only if the pleadings and evidence "show that there is no genuine

issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We have explained that "[a]n issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 841 (10th Cir. 2003). A fact issue is "'material' if under the substantive law it is essential to the proper disposition of the claim." *Id.*

Grass's claim that Johnson used excessive force in the course of arresting him must be analyzed under the Fourth Amendment and its reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). The inquiry is an objective one. We ask "whether the officers' actions [were] objectively reasonable in light of the facts and circumstances confronting them, without regard to underlying intent or motivation." *Weigel v. Broad*, 544 F.3d 1143, 1151 (10th Cir. 2008). The totality of the circumstances must be taken into account in each particular case, with careful attention paid to the severity of the crime, whether the suspect posed an immediate threat, and whether he was actively resisting arrest or attempting to flee. *Graham*, 490 U.S. at 396. Accordingly, conduct that passes constitutional muster in one case may constitute a Fourth Amendment violation in another.

With this framework in mind, we turn to the facts and circumstances surrounding Grass's arrest and ask whether he proffered sufficient evidence such that a rational juror could conclude Johnson acted unreasonably. *See Buck v. City*

*of Albuquerque*, 549 F.3d 1269, 1288 (10th Cir. 2008) (noting that whether police used excessive force in a § 1983 case is generally a fact question best answered by the jury). The first question we must answer is whether the de minimis nature of Grass's injury precludes an excessive force claim as a matter of law, because if the answer to that question is yes, then it is irrelevant whether Grass proffered sufficient evidence of Johnson's alleged misconduct. If, however, the answer is no, we must then go on to evaluate the strength of Grass's claim in light of the evidence before the district court.

B.

In *Graham*, the Supreme Court cautioned against finding every "push or shove" by a police officer a Fourth Amendment violation. 490 U.S. at 396. Heeding that warning, we recently rejected a Fourth Amendment claim premised on an allegation of unduly tight handcuffing, explaining that "a claim of excessive force requires some actual injury that is not de minimis, be it physical or emotional." *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007). This language would seem to support the essence of the district court's ruling – that because Grass suffered only minor injuries, he could not show the excessiveness of any force used by Johnson. The problem with this reasoning, however, is that it implicitly sanctions an officer's use of force, albeit resulting in only minor injury, that was wholly unnecessary to carry out the arrest. Our cases, including *Cortez* do not support that proposition. The above-quoted language from *Cortez*

-6-

referred to the plaintiff's allegations that the defendant police officer ignored his pleas that his handcuffs were too tight. He claimed the handcuffs left red marks on his wrists that were visible for days. We rejected his claim because there was too little evidence of any actual injury. *See id.* at 1129. Even taking his allegations as true, we held his injury was "insufficient, as a matter of law, to support an excessive force claim if the use of handcuffs [was] *otherwise justified.*" *Id.* (emphasis added).

This holding is of limited value in the present case because *Cortez* did not involve allegations of unjustified and actively abusive behavior by the arresting officer. Moreover, we explicitly acknowledged – and did not overrule – our prior precedent holding that "proof of physical injury manifested by visible cuts, bruises, abrasions or scars, is not an essential element of an excessive force claim." *Id.* at 1129 n.24 (citing *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1195 (10th Cir. 2001)). *Holland* is more instructive here. In that case, members of a police SWAT team were accused of using excessive force during the course of an arrest where they held children at gunpoint after gaining control of the situation. We held the officers' conduct violated plaintiffs' Fourth Amendment rights, explaining that the unwarranted nature of the force, rather than its potential for physical harm, was what rendered it unconstitutionally excessive.

Where a person has submitted to the officers' show of force without resistance, and where an officer has no reasonable cause to believe that person poses a danger to the officer or to others, it may be excessive and unreasonable to continue to aim a loaded firearm directly at that person, in contrast to simply holding the weapon in a fashion ready for immediate use.

*Id.* at 1193. Regarding the plaintiffs' lack of physical injuries, we explained that "the interests protected by the Fourth Amendment are not confined to the right to be secure against physical harm; they include liberty, property and privacy interests–a person's sense of security and individual dignity." *Id.* at 1195 (quotation omitted). Moreover, we specifically "decline[d] to adopt a 'bright-line' standard dictating that force cannot be 'excessive' unless it leaves visible cuts, bruises, abrasions or scars." *Id.* The holding of *Holland*, which we reaffirmed in *Cortez*, is that an excessive force claim is not dependent on physical injury or even physical contact, but on "patently unreasonable conduct" by the arresting officer. *See Cortez*, 478 F.3d at 1131.

This is not the "push or shove" case warned about in *Graham*. Grass indisputably cooperated in the course of being handcuffed and placed in the patrol car. If we accept his version of the facts as true, Johnson's use of force came after Grass was subdued and not posing a threat to anyone. At least one circuit has held that any force used under those circumstances is excessive as a matter of law. *Baker v. City of Hamilton*, 471 F.3d 601, 607 (6th Cir. 2006) ("We have held repeatedly that the use of force after a suspect has been incapacitated or

-8-

neutralized is excessive as a matter of law."); *see also Fontana v. Haskin*, 262 F.3d 871, 880 (9th Cir. 2001) ("Gratuitous and completely unnecessary acts of violence by the police during a seizure violate the Fourth Amendment."). We have not yet issued such a pronouncement. But we have consistently factored into the totality-of-the-circumstances analysis the level of the plaintiff's resistance or cooperation during the course of the arrest. *See, e.g., Cortez*, 478 F.3d at 1128 (stating there was "no indication . . . [plaintiff] actively resisted seizure or attempted to evade seizure by flight"); *Weigel*, 544 F.3d at 1153 (noting that officer subjected plaintiff to force "unnecessary to restrain him"); *Buck*, 549 F.3d at 1289-90 (questioning officers' use of pepper balls on plaintiff who was neither resisting nor evading arrest). Despite the de minimis nature of Grass's injuries, a review of the facts in the light most favorable to him gives rise to a jury question regarding whether Johnson acted reasonably. The district court therefore erred in rejecting his claim as a matter of law.

C.

Grass still had to proffer sufficient evidence to necessitate a trial on the question of whether Johnson hit him during the arrest. On this score, the district court concluded Grass had "failed to demonstrate a genuine issue of material fact for trial as to whether Johnson caused the *de minimis* injury first observed six hours after he was booked in to the Delaware County Jail[.]" R. Doc. 39 at 9. We disagree. The booking documents do support Johnson's claim that Grass

-9-

arrived at the jail unharmed. But this is not a case where an uninjured suspect claims the arresting officer beat him up. Grass provided uncontroverted proof that he was injured at some point between being pulled over by Johnson and the next morning. He has sworn both in his verified complaint and by affidavit that Johnson was the culprit. And he claims the booking documents are not reliable because Hunter recorded false information in order to protect Johnson. Hunter concedes he has no memory of the events in question so his affidavit adds little. Hence, the district court was left with Johnson's word against Grass's and documents whose reliability had been questioned. Given the dearth of evidence in the record, the district court could not have reached the conclusion it did unless it chose to believe Johnson over Grass. This was not permissible. *Norton*, 432 F.3d at 1154. On the evidence before the district court, a rational trier of fact could choose to believe either party on the issue of whether Johnson hit Grass after handcuffing and strapping him into the patrol car. Accordingly, the issue is genuine, *see Thom*, 353 F.3d at 851, and for the reasons explained above, it is also material. *See id.*

III.

Because we conclude a genuine issue of material fact exists surrounding Johnson's use of force in the course of arresting Grass, we REVERSE the district court's grant of summary judgment and REMAND this case for further proceedings. All pending motions are DENIED as moot.

Entered for the Court


Wade Brorby
Circuit Judge

No. 07-5152, <u>Grass v. Johnson</u>

**BALDOCK**, Circuit Judge, dissenting:

I respectfully dissent. I would affirm the trial court for substantially the same reasons set forth in its Opinion and Order, dated September 13, 2007.